## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
### CASE NO. _____

### DISTRICT COURT DOCKET (MIDDLE DISTRICT OF FLORIDA) NO: 3:13-CV-01287-HES-JBT



### ELI LILLY AND COMPANY

### AND LILLY USA, LLC

### PETITIONER,

### v.

### LESLIE PINCIARO DUDLEY

### RESPONDENT.

### PETITION FOR PERMISSION TO APPEAL ORDER GRANTING MOTION TO REMAND

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**Interested Persons.**  Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, Eli Lilly and Company and Lilly USA, LLC ("Lilly"), submits this Certificate of Interested Persons in the case and states as follows:

The following individuals and entities have an interest in the outcome of this matter:

1.  Ellen E. Boshkoff, Esq.

2.  Stephen M. Brooks, Esq.

3.  Thomas W. Carroll, Esq.

4. Leslie Pinciaro Dudley (Respondent)

5. Eric J. Holshouser, Esq.

6. Harvey E. Schlesinger, United States District Judge

7. William J. Scott, Esq.

8. Steven T. Simmons, Esq.

9. Janet R. Varnell, Esq.

10. Brian W. Warwick, Esq.

11. Eli Lilly and Company and Lilly USA, LLC (LLY) (Petitioner)

12. Faegre Baker Daniels LLP

13. Nelson Mullins Riley & Scarborough LLP

14. Varnell & Warwick, P.A.

15. The Law Offices of William J. Scott

**Corporate Disclosure.**  Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Lilly respectfully submits this Corporate Disclosure Statement and states as follows:

1. Lilly USA, LLC is a wholly owned subsidiary of Eli Lilly and Company.

2. Eli Lilly and Company has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

**INTRODUCTION**

Congress enacted the removal provisions of the Class Action Fairness Act ("CAFA") to "address inequitable state court treatment of class actions, and to put an end to certain abusive practices by plaintiffs' class counsel" by expanding federal diversity jurisdiction. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007). CAFA reflects "a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). CAFA achieves this goal by expanding federal diversity jurisdiction to cover any class action with minimally diverse parties and that puts more than $5,000,000 into controversy. 28 U.S.C. § 1332(d)(2)(A).

Contrary to CAFA's procedures and purpose, the district court ordered remand based on what would amount to an unreasonable barrier for many removable class actions: a requirement that Lilly prove and provide a methodology for calculating individualized damages for the almost one thousand potential class members at the outset of litigation. As one court has recognized, the "amount in controversy" is a pleading requirement, not a demand for proof. So, a defendant need only estimate what the pleadings put at issue. In contrast, "the need for [an exacting] formula or methodology" should be rejected as requiring "a defendant to 'confess liability' for the entire jurisdictional amount"—as several circuit courts of

appeal have now held. *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) (citing cases). Nor do such individualized calculations otherwise square with CAFA's expansionary purpose. If un-reviewed, the district court's decision would transform what is primarily a pleading exercise into a mini-trial. And it would make removal most difficult when class litigation is least justified: when individualized questions overwhelm common questions of liability or damages or worse, when they would do so but for a common, meritorious defense.

Only recently, this Court has clarified that "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction"—and further that, contrary to what "some district courts have thought," a defendant can use "deduction, inference, or other extrapolation" to establish the amount in controversy under CAFA. *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 753 (11th Cir. 2010). This remand order nevertheless suggests the need for more guidance. This Court should grant Lilly's petition and reverse.

## STATEMENT OF FACTS

***The putative multi-state class action complaint.*** Respondent Leslie Pinciaro Dudley ("Dudley") filed her state-court Class Action Complaint ("Complaint") on September 13, 2013. The Complaint (copy attached as Exhibit A) purports to bring claims against Lilly on behalf of herself and other similarly situated individuals, claiming generally that Lilly did not pay her certain reward

payments allegedly due pursuant to an employment agreement as a Fixed Duration Employee ("FDE") sales representative under breach of contract and equitable theories.  In her Complaint, Dudley alleges that she is a typical member of a class of persons comprising:

> All LILLY [sic] Fixed Duration Employees ("FDE") who, during the class period, did not receive (1) a sales incentive ("VOB"), and/or (2) a Customer Value Metric ("CVM"), and/or (3) a Service Value Chain ("SVC"), and/or (4) the value of a Reward Recognition Trip ("RRT"), payments as a result of their scheduled termination date occurring before the completion of the time period used for calculating said amounts.

Ex. A. p. 7, ¶ 36.  Dudley seeks payments for the three different types of incentive payments and the RRT, and she brings a promissory estoppel claim on her own behalf.  Ex. A, ¶¶ 20-22; 29-33; 70-79.  Lilly was served on September 23, 2013, first received a copy of the Complaint on that day, and returns of service were filed on September 30, 2013.

***Removal and Remand.***  On October 28, 2013, Lilly timely filed its Notice of Removal (copy attached as Exhibit B) on the grounds that diversity jurisdiction exists in this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).   This case is a class action, Dudley is a citizen of a different state than

Lilly, Lilly is not a citizen of Florida, the proposed class is more than 100 persons,[1] and the amount in controversy exceeds $5,000,000 exclusive of interests and costs.

The total number of FDEs as alleged in Dudley's complaint who were eligible to receive incentive compensation from January 1, 2008 to the date the complaint was filed was 1,181. Ex. B, p. 47, ¶ 6. Dudley alleges that the portion of her incentive that she did not receive was $4,600, and that she did not receive a Reward Recognition Trip in the amount of $5,000. Ex. A, ¶¶ 30, 32. These amounts, multiplied by the size of the putative class, place the amount in controversy at $11,337,000, well in excess of the $5 million CAFA removal threshold.

Dudley moved to remand the case to state court on November 22, 2013. *See* Mot. to Remand and Incorporated Mem. of Law ("Motion to Remand"), attached as Exhibit C). In her Motion to Remand, Dudley argued that Lilly failed to establish that CAFA's five million dollar amount in controversy threshold had been met. Ex. C, p.3. In response to the same, Lilly noted that the measure of the total amount in controversy is a function of both the amount in controversy per potential class member and the number of potential class members. *See* Lilly's

---

[1] There is no dispute that Dudley and Lilly are not citizens of the same state (Compl. p.2, ¶¶ 6-7) and that the proposed class is more than 100 persons (Compl. p.7, ¶ 37).

4

Resp. to Pl.'s Mot. to Remand ("Response to Motion to Remand"), attached as Exhibit D.

With respect to amount in controversy, Lilly explained that the amount in controversy per potential class member includes two types of alleged damages: (1) three different "salary incentives" or incentive compensation (with quarterly and biannual eligibility periods);[2] and (2) Reward Recognition Trips, or "RRTs." *E.g.*, Ex. A. ¶¶ 20-24. Using incentive compensation ranges for 2011 as an illustrative year, Lilly presented evidence that salary incentives of the type Dudley puts at issue in her Complaint ranged from $4,150 to $10,225; Lilly then used the midpoint of that range ($4,100 for those who arguably lost only biannual payment and $7,187.50 for those who arguably lost both payments) for a reasonable estimate of the amount of incentive compensation (not RRTs) at issue. Dudley herself alleged that she was entitled to receive $4,600 for only one of three salary incentives, thus providing further support for Lilly's estimated salary range. As for the RRTs, which Dudley did not fully describe in her complaint, Lilly accepted

---

[2] Some incentive compensation payments require employment through the end of the quarter; others require employment through the end of a bi-annual period. Thus, an employee who separated on a biannual date would not lose either payment by virtue of termination date. An employee who separated on a quarterly, but not biannual date, would lose biannual payments only. An employee who separated on a date other than a quarterly and/or biannual date would lose both biannual and quarterly payments. Ex. 4 to Ex. D, ¶ 5.

Dudley's calculation that the RRTs are valued at $5,000 each.  Ex. D, p. 5; Ex. A. ¶ 25.

As to the number of class members, although Lilly had previously provided an exact number of the FDEs who were employed during the relevant period, Dudley argued that Lilly has overlooked the Complaint's class definition (Compl. ¶ 36) and provided an overinclusive calculation of the amount in controversy. Mot. 4-7. Specifically, Dudley argued that her class should be limited to FDEs who were ineligible for incentive compensation due to their separation date.  Without conceding that its initial estimate of class members was improper, Lilly responded by providing detailed information about the termination dates of FDEs such that it could be determined whether the FDE at issue:  (1) was still employed such that he or she would not have lost compensation by virtue of separation date; or (2) had ended employment on a date which would not make the FDE ineligible for one or more of the compensation payments at issue. Supplemental Declaration of James R. Harenberg (Ex. 4 to Response to Motion to Remand), ¶¶ 5-10.

Lilly then summarized this information in a detailed chart.  Ex. D., p. 16-17.

On April 24, 2014, the District Court entered its Order remanding this case to state court (attached as Exhibit E).  The court ruled that Lilly had "provided no evidence that supports an unambiguous amount in controversy pertaining to the defined Class." Ex. E, p. 5.

On May 5, 2014, within ten days from the date of entry of the district court's order, Lilly timely filed this petition.  28 U.S.C. §1453(c)(1).

## QUESTION PRESENTED

Under CAFA, which enacted a federal policy in favor of removing class actions to federal court in order to counteract what Congress saw as abusive practices in state court, must a defendant both concede the plaintiff's case and provide a method for calculating class-wide damages at the outset of litigation merely to satisfy the jurisdictional threshold?

## RELIEF SOUGHT

Lilly requests permission to appeal the district court's remand decision under 28 U.S.C. § 1453(c)(1) and further asks that the Court find federal jurisdiction.

## REASONS FOR GRANTING THE PETITION

This is a nation-wide class action that Lilly properly removed to federal court.  Ordering remand, the district court faulted Lilly for not calculating the exact, prorated incentive payments to which each of nearly 1,000 putative class members working under different versions of four types of incentive pay programs are contractually "entitled."  But CAFA's jurisdictional minimum of $5,000,000 is a pleading requirement, not a demand for proof.  Still less is it a demand that defendants concede and calculate individualized liability at the outset of class litigation.  Indeed, by confusing pleading with proof, the district court has placed

7

CAFA's jurisdictional requirements directly at odds with its purpose: to broaden federal diversity jurisdiction over multistate class actions. This is a sharp departure from the law of other Circuits and, indeed, from this Court's recent guidance in *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744 (11th Cir. 2010). The remand order should be reversed.

## I. THIS MULTI-STATE CLASS ACTION FALLS WITHIN FEDERAL DIVERSITY JURISDICTION EXPANDED BY CAFA.

### A. A defendant need not prove the plaintiff's case merely to identify potential class members for purposes of supporting removal.

CAFA gives federal courts jurisdiction over any class action with minimally diverse parties and that puts more than $5,000,000 (excluding costs and interest) into controversy. 28 U.S.C. § 1332(d)(2)(A). Here, there is no dispute that Lilly and the former employees who seek to recover compensation in this putative nationwide class action are minimally diverse. Lilly has also shown that the claims of nearly 1000 former employees should be considered for purposes of determining the amount in controversy. As defined by the complaint, the putative class includes: "all Fixed Duration Employees who, during the class period, did not receive [incentive] payments *as a result of their scheduled termination date occurring before the completion of the time period* used for calculating said amounts." Ex. A, ¶ 36 (emphasis added). Thus, in support of its removal petition, Lilly presented evidence showing the number of potential class members who were

terminated "before the time period used for calculating [incentive compensation]" – insuring, in other words, that the estimate of class members was tailored precisely to the class definition.[3]

Rather than accept this straight-forward calculation—and the specific number of potential class members identified by Lilly—the district court faulted Lilly for failing "to identify a specific number of class participants." Ex. E, p. 3. According to the court, "Plaintiff made clear that [the class is limited] to only those FDEs that did not receive their promised compensation" and that "Defendants would have access to their own employment records to establish by preponderance of the evidence exactly how many members of the class exist." Although not entirely clear, the court apparently interpreted CAFA to go further and determine which of almost one thousand former FDEs may have been paid incentive compensation regardless of termination date, or who had not

---

[3] Plaintiff states: "In their motion to dismiss, Defendants plainly assert that only those FDE's who are employed at the end of the incentive payout period are entitled to full incentive payments." Ex. C, p. 9. Lilly showed that the potential class of 1,181 eligible FDEs fall into four categories as follows: (1) 210 current employees are removed entirely; (2) the 122 employees who ended employment on the end of a biannual end date include only Reward Recognition Trip calculations, but not salary incentives; (3) the 339 FDEs ending employment on a quarterly end date but not a biannual end date include only biannual salary incentives and Reward Recognition Trips; and (4) the remaining 510 FDEs who ended employment on a day other than a quarterly or biannual end date include both quarterly and biannual salary incentives and Reward Recognition Trips.

fulfilled other obligations necessary to receive the "promised" compensation.  Ex. E, p. 3.

The district court's order confuses CAFA's pleading requirements with a demand for proof.  As courts have held, removal under CAFA is primarily a pleading exercise: "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir. 2008) (same); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir. 2005).  And here, the pleadings put claims by *all* FDEs counted by Lilly—each of whom the Plaintiff has alleged lost eligibility for incentive payments because of a termination date—at issue.[4]  So nothing more is required. *See* 28 U.S.C. § 1332(d)(1)(D) ("the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.").[5]

---

[4] Ex. A, ¶ 4 ("when Plaintiff's employment term came to an end, Lilly failed to pay Plaintiff and other Fixed Duration Employees the incentives they had earned prior to their scheduled termination date"); ¶ 28 (alleging that Plaintiff did not receive incentive compensation by virtue of her termination date), ¶29 (alleging that Plaintiff and the putative class are entitled to pro-rated bonuses); ¶¶ 38, 39 (alleging that Plaintiff's circumstances are common and typical of the class).

[5] *See also Miedema v. Maytag Corp.,* 450 F.3d 1322, [ ] (11th Cir. 2006) ("under the most logical reading of the original complaint, Miedema was alleging that all of the listed range/oven models sold in Florida contained the alleged defective

Nor would CAFA require more if the complaint *did* limit class members to FDEs who met sales targets or other incentive criteria – which it does not. Whether any of the 971 FDEs counted by Lilly "did not receive . . . promised compensation" remains in controversy. Ex. A. Indeed, this *is* the controversy— and so outside the jurisdictional inquiry. The "plaintiffs' likelihood of success on the merits," as this Court has explained, "is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, at 751. *See generally Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) ("[A] federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though . . . the amount recovered falls short of [the jurisdictional amount].""). Whereas federal jurisdiction is determined at removal, "discovery and trial come later." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (the amount in controversy "is a pleading requirement, not a demand for proof.").

The district court, in short, has erroneously required Lilly to prove up the sales records of almost one thousand potential class members *merely to estimate*

---

motorized latch assembly. Thus, the district court should not have faulted Maytag for "fail[ing] to confirm that each of the 6,729 units had the defective motorized door latch assembly."); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 295 (4th Cir. 2008) (vacating remand order where district court had limited potential class to cell phone customers who willingly paid fees for "Roadside Assistance" program whereas complaint "did not distinguish between "willing" and "unwilling" customers, and thus included any phone customer who was charged the fee after being automatically enrolled in the program.")

*class size* under CAFA. Contrary to CAFA's language and purpose, the court has elevated mere pleading requirements to a demand for proof. *Id.; see generally Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789–90 (8th Cir. 2012) (stating that CAFA jurisdiction is determined by "the operative complaint at the time of removal"). *See also Miedema*, 450 F.3d at 1329 ("[T]he text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal[.]").

### B.    A defendant need not provide a methodology for calculating class-wide damages to support removal under CAFA

The district court also disregarded the purpose and language of CAFA by requiring Lilly to provide a methodology for calculating class-wide damages with precision.  In opposing Dudley's motion to remand, Lilly provided evidence to support its estimate that the amount in controversy, an aggregate of 971 individual claims, is of $9,910,525.  Ex. D.  This estimate (explained further below) rests on the average incentive targets for an illustrative year within ranges associated with different incentive programs.  But, apparently for the same reason the district court found Lilly's estimate of class size inadequate—that is, because Lilly did not determine the precise relationship between performance and incentive payment criteria for each of almost one thousand former employees—the court also rejected Lilly's valuation of FDE claims.  Lilly, the court objected, had left it to guess

12

"what each member was entitled to receive as compensation and did not." Ex. E, p. 4.

This finding further misinterprets CAFA. As explained, a defendant seeking removal need only show that the *complaint* puts an amount of at least $5,000,000 "into controversy." *Pretka,* 608 F.3d at 752. The complaint here alleges both that: 1) "Dudley and other FDE's were routinely paid the incentives described above in previous payout periods" (Complaint, ¶ 26); and 2) that FDE's are entitled to "the incentives earned prior to their termination date." (Ex. A, ¶ 29).[6] So the full amount of incentive compensation available to each class member is at issue. *See, e.g., Spivey,* (relying on allegations that Spivey's credit card was charged without authorization and that making unauthorized charges is a standard practice at Vertrue to find that *all* billings were at issue for purposes of calculating amount in controversy); *Lee-Bolton v. Koppers, Inc.,* 848 F. Supp. 2d 1342, 1355 (N.D. Fla. 2011) (reciting that the "proper measure of the amount in controversy . . . is the maximum value [the] action could possibly represent to each putative class member). Lilly met its jurisdictional burden by providing evidence that incentive payments available to the almost one thousand potential class members exceed (in aggregate) $5,000,000.

---

[6] Though the complaint asks for the "pro-rated" amount of earned incentives, it never defines the term "pro-rated."

Rejecting this showing, the district court seemed to require plaintiff-by-plaintiff, sales record-by-sales record proof of each incentive payment allegedly forfeited at termination. Ex. E, p. 4. Yet as other circuit courts have recognized, this is a demand not just for proof but that Lilly concede liability for the entire jurisdictional amount. *See Raskas*, 719 F.3d at 888 (noting courts have rejected "the need for this kind of formula or methodology as it would require a defendant to 'confess liability' for the entire jurisdictional amount ) (quoting and citing Seventh, Eighth, and Ninth Circuit precedent). The Eighth Circuit's decision in *Raskas* is instructive. There, the district court had found that medicine manufacturers' attempt to show the jurisdictional amount by providing figures on *all* medicine sales during the limitations period was over-inclusive: plaintiffs' claims, the court noted, involved only purchasers who discarded and replaced those medicines based on allegedly deceptive "expiration dates." *Id.* at 886-87. The Eighth Circuit, however, disagreed. Reversing remand, the court recognized that reducing sales figures to separate out only those individuals who were allegedly harmed is tantamount to conceding liability—an insupportable demand at removal. *Id.*

Here, the district court would apparently require Lilly to concede that particular FDEs are "entitled" to incentive payments and then to further calculate, with precision, what each FDE could have received. CAFA's $5,000,000

minimum, however, is a jurisdictional threshold, not a price of admission.[7]  And

imposing this price brings CAFA's jurisdictional requirements into collision with

its purpose: to expand federal jurisdiction over multistate class actions

Further, merely by requiring individualized *calculations* of damages at the

outset of class litigation, the district court has contravened the purpose of this

jurisdiction-expanding statute CAFA.  Congress enacted CAFA to (among other

things) "address inequitable state court treatment of class actions." *Lowery v. Ala.*

*Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007).  The statute also reflects "a

strong preference that interstate class actions should be heard in a federal court if

properly removed by any defendant." *Westerfeld*, 621 F.3d at 822.  Yet to remove

this nation-wide class action, the district court would require Lilly to provide

exacting calculations for each of almost a thousand former employees—

calculations that involve different jobs, at least four kinds of incentive payments,

different years, different performances, and unspecified "proration"—all of it when

litigation has barely begun.  This is a case of the cure being worse than the disease.

Such highly individualized calculations would impose an impracticable if not

---

[7] For the same reason, the district court's demand that Lilly evaluate the sales performance of FDEs merely to identify potential class members would impermissibly require to confess liability for the entire jurisdictional amount. *Raskas v. Johnson & Johnson*, 719 F.3d 884 (8th Cir. 2013) (finding total medicine sales rather than only those sales to purchasers who were deceived by expiration deadlines—as reflected in the class definition—were properly included in the "amount in controversy" for purposes of removal under CAFA).

impossible burden at the very outset of litigation. And they would make removal most difficult when class litigation is least justified: when individualized questions overwhelm common questions—or worse, when they would they would do so but for a common, meritorious defense.

Insisting that Lilly prove class-wide damages immediately and on an individualized basis, the district court would impose the very sort of unjustified burden that CAFA was intended to relieve.

### C. A defendant need only show the amount in controversy by a preponderance of the evidence, not prove class-wide damages beyond all doubt.

Yet another reason for review, the district court's remand order disregards this Court's guidance in *Pretka v. Kolter City Plaza II, Inc.* The Court has only recently clarified the defendant's burden of proof under CAFA: to support removal, it is enough that "a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka,* at 754. In short, a defendant need only show the amount in controversy by a preponderance of the evidence, not prove class-wide damages beyond all doubt. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir.2010) ("The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all

uncertainty about it."); *see also Miedema v. Maytag Corp.,* 450 F.3d 1322, 1330 (11th Cir. 2006) (reciting the rule that where "the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement").

Here, Lilly has done just that. Faced with the impracticability (if not impossibility) of calculating each maximum incentive payment for each of more than one thousand FDEs, Lilly has offered both evidence and the reasonable inferences that evidence supports. First, Lilly showed that 971 potential class members could be divided into two categories based on their termination dates relative to incentive payout periods: FDEs ineligible for quarterly *and* biannual incentive compensation and FDEs only ineligible for biannual incentive compensation. Lilly next showed that quarterly incentive compensation targets for eligible sales representatives ranged from $1,450 to $4,725 and biannual incentive compensation targets ranged from $2,700 to $5,500 in 2011. [Decl. of James R. Harenberg ("Harenberg Decl.") ¶ 7, attached to Ex. B as Ex. 2.] Taking the midpoint of these ranges as well as the pleaded value of an incentive "rewards trip," Lilly then established the aggregate value of average incentive payments that could have been forfeited by potential class members at termination—a figure of $9,910,525.

Notwithstanding the Court's analysis in *Pretka,* the district court found that Lilly failed to satisfy its evidentiary burden under CAFA.  The court, moreover, did not just find Lilly's evidence insufficient; it disregarded that evidence altogether.  Deeming Lilly's entire showing irrelevant, its order declared that Lilly had "provided no evidence that supports an unambiguous amount in controversy pertaining to the defined Class."  *Id.*  Ex. E, p. 4-5 ("Defendants' argument and supporting evidence is irrelevant and misses the point of the CAFA requirements).  The district court suggested, in other words, that anything less than conclusive evidence of damages is no evidence at all.

This demand for mathematical precision contravenes the instruction of this Court.  As *Pretka* has made clear, CAFA's jurisdictional requirements are limited: a defendant need only *estimate* the amount in controversy.  *Pretka* at 750.  A defendant need only offer preponderant evidence that this amount more likely exceeds $5,000,000 than not.  *Pretka, citing Lowery,* 483 F.3d at 1208–10.  And a defendant may use any type of evidence and reasonable inference to meet its jurisdictional burden.  *Pretka,* at 755 (the "substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy" that standard.)   By rejecting all of these limits, the district court would require a mini-trial at the outset of litigation. Far from the liberal interpretation of CAFA intended by Congress, the court would read CAFA to impose the same evidentiary burdens

as class litigation itself. *See Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (Congress intended that CAFA would be interpreted liberally to "favor[] federal jurisdiction over class actions.").

In sum, establishing the amount in controversy does not require a defendant to concede, calculate, and establish to a certainty aggregate damages on class members' behalf. Lilly has provided evidence and reasonable inference to meet its jurisdictional burden. Thus, the ruling below is erroneous.

## CONCLUSION

For the reasons given above, this Court should grant the petition, reverse the district court's remand order, and find federal jurisdiction.

Respectfully submitted,

Stephen M. Brooks
**Nelson Mullins Riley & Scarborough LLP**
201 17th Street, Suite 1700
Atlanta, GA 30363
(404)322-6272 – Telephone
(404) 322-6050 – Facsimile
Georgia Bar No.: 085151
E-mail:
stephen.brooks@nelsonmullins.com

Thomas W. Carroll
*Application for Admission Pro Hac Vice Forthcoming*
**Faegre Baker Daniels llp**
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532

19

(303) 607-3500 – Telephone
(303) 607-3600 – Facsimile
E-mail:  thomas.carroll@FaegreBD.com

Ellen E. Boshkoff
*Application for Admission Pro Hac Vice*
*Forthcoming*
**FAEGRE BAKER DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204-1750
(317) 237-1266 – Telephone
(317) 237-8566 – Facsimile
E-mail:  ellen.boshkoff@FaegreBD.com

*Attorneys for Respondents,*
*Eli Lilly and Company and Lilly USA, LLC*

_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Respondents Petition to Appeal Order Granting Motion to Remand was served by U.S. Mail this 5th day of May, 2014 upon the following:

Brian W. Warwick
E-mail:  brwarwick@varnellandwarwick.com
marnst@varnellandwarwick.com (secondary)

Janet R. Varnell
E-mail:  jvarnell@varnellandwarwick.com

Steven T. Simmons
E-mail:  ssimmrons@varnellandwarwick.com

**VARNELL & WARWICK, P.A.**
P O Box 1870
Lady Lake, FL 32158
(353) 753-8600 – Telephone

William J. Scott
**THE LAW OFFICES OF WILLIAM J. SCOTT**
554 Lomax Street
Jacksonville, FL  32204
E-mail:  wjscott.service@wjscottlaw.com
(904) 398-9995 – Telephone

*Attorneys for Plaintiff*

US.54133935.03

21